UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

LORI DEJESUS AND STEVEN DEJESUS,

                                                    COMPLAINT AND
                                    Plaintiffs,     JURY DEMAND

            -against-                               Docket No. 14CV2546

CITY OF NEW YORK, POLICE OFFICER EDWYN              ECF CASE
STUART, DETECTIVE DOUGLAS CONNORS,
DETECTIVE JOHN DOES 1-2, LIEUTENANT
DELVAN, POLICE OFFICER ERIK MORENO, POLICE
OFFICER TRONE, POLICE OFFICER "JAMES DOES",
SERGEANT GAVARS, POLICE OFFICER LEE,
POLICE OFFICER JORDON, CAPTAIN GRANDSTAFF,
OFFICER SNEED, OFFICER MONGELLO, SERGEANT
CHECHINI, SHIELD NO. 613, OFFICER VANDROSS
"ROBERT DOES" 1-8,

                                    Defendants.

------------------------------------------------------------------------- x


Plaintiffs Lori Dejesus and Steven Dejesus by their attorney Cynthia H. Conti-Cook, of

Stoll, Glickman & Bellina, LLP, for their complaint against defendant New York Police

Department officers, alleges as follows:


## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief through 42 U.S.C.

§1983, §1985 and 42 U.S. §1988 for the violation of their civil rights protected by the

Fourth and Fourteenth Amendments, in addition to violations of the laws and

Constitution of the State of New York.

2.    The claim arises from a series of incidents generally beginning on February 4,

2013 in which defendants, officers from the 75th precinct, acting in conspiracy with Ms.

1

Dejesus' cousin, Edwyn Stuart, a NYPD police officer, under color of state law, through perjury, false imprisonment, and malicious prosecution, repeatedly violated plaintiffs' constitutional rights.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

PARTIES

7. Plaintiffs Steven Dejesus and Lori Dejesus, husband and wife, resided at all times here relevant at 808 Warwick Street, in Brooklyn, New York, Kings County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the

policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9.    Police Officer Edwyn Stuart was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. He is also plaintiff's cousin. On information and belief, at all times relevant hereto, Defendant Stuart was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Stuart was returning from military leave on the date of the incident but was working in NYPD's 108th precinct.

10.    Police Officer Douglas Connors, shield 2106, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Connors was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on February 4, 2013. Upon information and belief, defendant Connors was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Connors supervisors failed to train, supervise, discipline and control Connors despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and

dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Connors was under the command of the 75th precinct and is sued in his individual capacity.

11. Lieutenant Delvan, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Delvan was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 7, 2013. Upon information and belief, defendant Delvan was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Delvan supervisors failed to train, supervise, discipline and control Delvan despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Delvan was under the command of the 75th precinct and is sued in his individual capacity.

12. Police Officer Erik Moreno, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Moreno was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on February 19, 2013. Upon information and belief, defendant Moreno was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Moreno supervisors failed to train, supervise, discipline and

control Moreno despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Moreno was under the command of the 75th precinct and is sued in his individual capacity.

13. Police Officer Trone, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Trone was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on February 19, 2013. Upon information and belief, defendant Trone was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Trone supervisors failed to train, supervise, discipline and control Trone despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Trone was under the command of the 75th precinct and is sued in his individual capacity.

14. Sergeant Gavars, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Gavars was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 7, 2013. Upon information and belief, defendant Gavars was under the command of the 75th precinct on the date of the incident. While an officer at the

5

75th precinct, Gavars supervisors failed to train, supervise, discipline and control Gavars despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Gavars was under the command of the 75th precinct and is sued in his individual capacity.

15. Police Officer Lee, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Lee was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 7, 2013. Upon information and belief, defendant Lee was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Lee supervisors failed to train, supervise, discipline and control Lee despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Lee was under the command of the 75th precinct and is sued in his individual capacity.

16. Police Officer Jordon, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Jordon was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 7, 2013. Upon information and belief, defendant Jordon

was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Jordon supervisors failed to train, supervise, discipline and control Jordon despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Jordon was under the command of the 75th precinct and is sued in his individual capacity.

17. Captain Grandstaff, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Captain Grandstaff was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 7, 2013. Upon information and belief, defendant Captain Grandstaff was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Captain Grandstaff supervisors failed to train, supervise, discipline and control Captain Grandstaff despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Captain Grandstaff was under the command of the 75th precinct and is sued in his individual capacity.

18. Officer Sneed, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Sneed was involved in the decision to arrest plaintiff without probable cause or failed to

intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 11, 2013. Upon information and belief, defendant Officer Sneed was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Officer Sneed supervisors failed to train, supervise, discipline and control Officer Sneed despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Officer Sneed was under the command of the 75th precinct and is sued in his individual capacity.

19. Officer Mongello, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Mongello was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 11, 2013. Upon information and belief, defendant Officer Mongello was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Officer Mongello supervisors failed to train, supervise, discipline and control Officer Mongello despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Officer Mongello was under the command of the 75th precinct and is sued in his individual capacity.

20. Sergeant Chechini, Shield No. 613, was, at all times here relevant, a police

officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Chechini was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 11, 2013. Upon information and belief, defendant Sergeant Chechini was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Sergeant Chechini supervisors failed to train, supervise, discipline and control Sergeant Chechini despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Sergeant Chechini was under the command of the 75th precinct and is sued in his individual capacity.

21. Officer Vandross, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Vandross was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause on March 11, 2013. Upon information and belief, defendant Officer Vandross was under the command of the 75th precinct on the date of the incident. While an officer at the 75th precinct, Officer Vandross supervisors failed to train, supervise, discipline and control Officer Vandross despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto,

Defendant Officer Vandross was under the command of the 75th precinct and is sued in his individual capacity.

22.    "JOHN DOE", "JAMES DOE" AND "ROBERT DOE" officers were, at all times here relevant, police officers of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, they were involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Two "JOHN DOES" were involved in the February 4, 2013 incident, one "JAMES DOES" was involved in the February 19, 2013 incident, and approximately eight "ROBERT DOES" were involved in the March 11, 2013 incident.

23.    At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

### FACTUAL CHARGES

24.    On October 15, 2012, plaintiffs moved into the first floor apartment of 808 Warwick Street, Brooklyn, New York. The property was taken over by plaintiff Lori Dejesus' mother and aunt from Ms. Dejesus' grandparents before her grandmother passed away.

25.    Plaintiffs rented the apartment in the house from Ms. Dejesus' mother pursuant to a signed lease agreement. The lease includes the first floor apartment, basement, garage and backyard.

26.    Doris Stuart and Walwyn Stuart, Ms. Dejesus' aunt and uncle lived in the

second floor apartment, but Ms. Stuart passed away on October 11, 2012.

27. Walwyn Stuart was living alone in the second floor apartment from October 2012 through March 2013. Mr. W. Stuart passed away in June 2013.

28. His children, Ms. Dejesus' cousins, Deidre Dilbert and Edwyn Stuart were often at their parents' apartment on the second floor.

29. The day plaintiff moved in, Ms. Dilbert and her boyfriend Peter Faust came to plaintiffs' apartment and kicked the door down.

30. Deidre Dilbert began to harass plaintiffs repeatedly, especially Ms. Dejesus, telling her "we don't want you here", banging on her door and waving her hands and objects, like brooms, at Ms. Dejesus.

31. On December 12, 2012, plaintiff Lori Dejesus filed a temporary order of protection in Kings County Family Court, directing Deidre Dilbert to refrain from harassing and threatening Lori Dejesus.

32. On December 15 and 17, 2012, Ms. Dilbert violated the order of protection. On December 17, 2012, Ms. Dilbert was arrested.

33. On January 31, 2013, Ms. Dilbert's brother, Edwyn Stuart, came to plaintiffs' apartment door. He had recently returned from military leave.

34. He was also a New York Police Department Police Officer.

35. When plaintiff opened her door on January 31, 2013, there were police officers following Edwyn Stuart through the house, into her basement.

36. Officers falsely accused plaintiffs of being squatters.

37. Ms. Dejesus presented a copy of the lease and deed to the officers.

38. Officers took a picture of the lease and the deed on a smart phone and went

downstairs. An officer came back to Ms. Dejesus' door and pointed to several boxes inside her apartment and said, "Edwyn said those are his boxes".

39.    Ms. Dejesus showed the officers the boxes, which had her contact information on them, verifying that they were her property.

40.    The officer then said that "Edwyn said that the love-seat is his", pointing to a love-seat in view of the doorway. Ms. Dejesus informed him that the love-seat was also hers.

41.    When the officer asked to see the serial number, plaintiffs declined him entry and asked to call a superior officer.

42.    The police officers left her door and went back into the basement.

<u>FEBRUARY 4, 2013 UNLAWFUL ENTRY AND FALSE ARREST OF</u>

<u>LORI DEJESUS BY DETECTIVE D. CONNORS</u>

<u>PLUS TWO JOHN DOE DETECTIVES</u>

43.    On February 4, 2013, Detective Connors and two John Doe detectives, along with Stuart, returned to plaintiffs' apartment inquiring about the love-seat.

44.    Plaintiff Lori Dejesus was arrested for possession of stolen property.

45.    While Ms. Dejesus was locked up, her mother and Mr. Dejesus were prevented from entering the apartment from 8:00 p.m. until 10:00 a.m. the next day, even though Ms. Dejesus' mother showed the officers her deed.

46.    Plaintiff Lori Dejesus was in custody for approximately 24 hours.

47.    The criminal case was dismissed on December 17, 2013 after numerous court appearances when the prosecution failed to try the case before speedy trial deadlines.

48.    On February 6, 2013, a police car sat outside the house with the lights flashing

for about half an hour.

49.   On February 7, 2013, plaintiff Ms. Dejesus went to family court to obtain a temporary protection order against Edwyn Stuart in which she reported that Mr. Stuart told her he would make her life uncomfortable in retaliation for having his sister (Deidre) arrested for violating the order of protection.

50.   Ms. Dejesus called 911 after obtaining the order in order to have police serve it on Edwyn Stuart, who was at 808 Warwick at the time.

51.   Sergeant Salmon Shield No. 2836 and at least 5 to 6 other officers from the 75th precinct arrived, reviewed the order of protection and handed it back to Ms. Dejesus, refusing to serve it.

52.   Deidre Dilbert was also present at 808 Warwick at the time in violation of the order of protection.

53.   Sergeant Salmon directed her to leave but refused to arrest her, despite the order of protection.

54.   On February 8, 2013, Police Officer Enks called plaintiff's house abusively demanding that she drop the report against Deidre Dilbert.

FEBRUARY 19 2013, UNLAWFUL ENTRY AND FALSE IMPRISONMENT OF LORI DEJESUS BY POLICE OFFICER ERIK MORENO, POLICE OFFICER TRONE AND ONE JAMES DOE POLICE OFFICERS

55.   On February 19, 2013, Police Officer Erik Moreno, Officer Trone plus one other police officer pushed their way into the apartment, searching through the apartment without consent and without a warrant.

56.   Plaintiff Lori Dejesus asked them to leave and they refused. While they were in

the apartment, she saw Edwyn Stuart in the hallway.

57. She again tried to have the officers serve him with the order of protection and they refused.

58. Officer Erik Moreno repeatedly asked plaintiff harassing questions and searched through her belongings without consent.

59. She asked the officers to leave repeatedly and they refused.

60. Defendants forced her to sit on her couch in a tank top with the front door open, causing her to be very cold.

61. Defendants did not allow her to get a sweater.

62. Plaintiff Lori Dejesus called 911 and asked for a supervisor to be sent to her house.

63. After approximately 3-4 hours of the officers being in her house, Sergeant Darcy came to the house, directed Edwyn Stuart to go with the officers to the precinct, where Officer Moreno finally served him with the order of protection at the Sergeant's direction.

64. At some point after February 19, 2013, Edwyn Stuart went to family court off calendar and had the petition vacated.

## MARCH 7, 2013 UNLAWFUL ENTRY AND FALSE ARREST OF BOTH PLAINTIFFS BY LIEUTENANT DELVAN, SERGEANT GAVARS, POLICE OFFICERS LEE AND JORDAN

65. On March 7, 2013 Police Officers Lee and Jordan came to plaintiff's home about a 911 call.

66. Plaintiff called 911 to ask for a supervisor to be sent over and Sergeant Gavars

came.

67. She showed Sergeant Gavars her lease, as well as the order of protection against Edwyn Stuart.

68. Regardless, defendants brought both plaintiffs to the precinct against their will.

69. In the car, Mr. Dejesus asked the officer if they were under arrest and the officer said no. He asked if they were free to go, and the officer also said no.

70. Lieutenant Delvan was at the precinct and informed plaintiff and her husband that they were not free to leave and not under arrest.

71. Ms. Dejesus' criminal defense attorney made several phone calls to the precinct demanding their release.

72. Plaintiff and her husband were at the precinct for approximately 6 hours before they were released with no charges.

73. On March 9, 2013 a plainclothes officer repeatedly rang plaintiff's door bell and sat in his car for several hours outside plaintiff's house.

MARCH 11, 2013 UNLAWFUL ENTRY AND FALSE ARREST OF

LORI DEJESUS BY OFFICER SNEED, OFFICER MONGELLO,

SERGEANT CHECHINI, SHIELD NO. 613, OFFICER VANDROSS

AND APPROXIMATELY EIGHT "ROBERT DOES"

74. On March 11, 2013 Edwyn Stuart came again with approximately 12 Emergency Service Unit officers, who carried a battering ram, and claimed plaintiff broke into his apartment, which he claimed was the basement apartment.

75. Mr. Stuart never lived in the basement apartment, which is uninhabitable, as confirmed by a Department of Buildings inspection.

76. Plaintiff Lori Dejesus was again arrested, handcuffed and held at the precinct for 8 hours in a disgusting holding cell until she was released, again, with no charges.

77. Again, Ms. Dejesus' criminal defense attorney made several phone calls to the precinct demanding her release.

78. While she was in the holding cell in the 75th precinct, a female officer told her "Edwyn has a lot of friends here".

79. Plaintiff reported these incidents to the Rackets Bureau and Internal Affairs Bureau.

80. On March 14, 2013, a police car 3887 from the 75th precinct sat in front of plaintiff's house for 30 minutes.

81. On May 30, 2013, the NYC Department of Buildings specifically did not violate Ms. Dejesus for illegal conversion because the basement "space appears to be arranged as recreations/storage".

82. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

83. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

84. As a direct and proximate result of the acts of defendants, plaintiff suffered the

following injuries and damages:

    a.      Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.      Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c.      Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d.      Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

    e.      Physical pain and suffering;

    f.      Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    g.      Loss of liberty; and

    h.      Attorney's and court fees.

## FIRST CAUSE OF ACTION
Defendants Falsely Arrested and Falsely Imprisoned
Plaintiff Under 42 U.S.C. § 1983 and § 1985

85.   The above paragraphs are here incorporated by reference.

86.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff Lori Dejesus on February 4, 19, March 7 and March 11, 2013.

87.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff Steven Dejesus on March 7, 2013.

88.   The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and

imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

89. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

90. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, imprisoned and falsely charged.

91. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

92. All of this occurred without any illegal conduct by plaintiff.

93. All charges were dismissed.

94. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

95. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

96. The above paragraphs are here incorporated by reference.

97. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

98. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

99. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

100. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

101. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

102. All of this occurred without any illegal conduct by plaintiff.

103. All charges were dismissed.

104. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

105. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

106. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants

acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

107. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## THIRD CAUSE OF ACTION
### False Arrest and False Imprisonment
### (Against All Defendants)

108. The above paragraphs are here incorporated by reference.

109. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

110. Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to her confinement.

111. All charges were dismissed.

112. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

113. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## FOURTH CAUSE OF ACTION
### Malicious Prosecution
### (Against All Defendants)

114. The preceding paragraphs are here incorporated by reference.

115. Defendants, acting with malice, initiated a prosecution against plaintiff Lori Dejesus and caused him to be prosecuted.

116. Defendants did not have probable cause to initiate proceeding.

117. The criminal proceedings were terminated in plaintiff's favor.

118. Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

119. As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

FIFTH CAUSE OF ACTION
Offensive Touching, Tortious Assault and Battery
(Against All Defendants)

120. The above paragraphs are here incorporated by reference.

121. Upon handcuffing and arresting plaintiffs, defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching on February 4, 19, March 7 and March 11, 2013.

122. Defendants engaged in and subjected plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

123. Defendants used excessive and unnecessary force with plaintiffs.

124. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

125. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SIXTH CAUSE OF ACTION
### Trespass and Unlawful Eviction
(Against Detective Connors and John Does, Police Officer Erik Moreno, Police Officer Trone and James Does and Officer Sneed, Officer Mongello, Sergeant Chechini, Shield No. 613, Officer Vandross, Robert Does)

126. All preceding paragraphs are here incorporated by reference.

127. Defendants voluntarily and intentionally entered plaintiff's residential premises where they were not invited and not given consent to enter on February 4, 19, March 7, and March 11, 2013.

128. On February 4, 2013, plaintiff Mr. Dejesus was unlawfully prevented from entering his apartment from 8:00 p.m. until 10:00 a.m. the next morning.

129. Defendants have deprived plaintiff of her civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiff under New York State common law, 42 USC §1983 and the New York State Constitution.

130. As a result of the trespass, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

    A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

    B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

    C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

    D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:      April 17, 2014
            Brooklyn, New York

TO:

    City of New York
    100 Church Street
    New York, NY 10007

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiffs
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com